# 25-1964-cv

## United States Court of Appeals

*for the*

## Second Circuit

STEVEN M. NEUHAUS, individually and in his official
capacity as County Executive, COUNTY OF ORANGE,

*Plaintiffs-Appellants,*

— v. —

TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY,
METROPOLITAN TRANSPORTATION AUTHORITY,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFFS-APPELLANTS

WILLIAM S. BADURA
ORANGE COUNTY DEPARTMENT OF LAW
*Attorneys for Plaintiffs-Appellants*
255-275 Main Street
Goshen, New York 10924
(845) 291-3150

CP COUNSEL PRESS   (800) 4-APPEAL • (514973)

# **TABLE OF CONTENTS**

Pages

TABLE OF AUTHORITIES ..................................................................i-ii

INTRODUCTION ........................................................................ 1

STATEMENT OF JURISDICTION................................................ 2

STATEMENT OF ISSUES PRESENTED......................................... 2

STATEMENT OF THE CASE....................................................... 3

STANDARD OF REVIEW .......................................................... 4

ARGUMENT

POINT I
IT WAS AN ERROR TO DISMISS THE RIGHT TO
TRAVEL CLAIM ...................................................................... 5

    A. The Program is Subject to Strict Scrutiny ................................. 5

    B. The Program Violates the Right to Travel
       Under *Northwest Airlines* ............................................... 8

POINT II
IT WAS AN ERROR TO DISMISS THE
DUE PROCESS/EQUAL PROTECTION CLAIM ........................... 12

POINT III
IT WAS AN ERROR TO DISMISS THE UNAUTHORIZED
TAX CLAIM............................................................................ 14

CONCLUSION ........................................................................ 16

# <u>TABLE OF AUTHORITIES</u>

**<u>Page(s)</u>**

**<u>Cases</u>**

*Angus Partners LLC v. Walder,* 52 F.Supp. 3d 546 (S.D.N.Y. 2014).............9, 10, 11

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) .................................................................4, 5

*Atty. Gen. of New York v. Soto-Lopez,* 476 U.S. 898 (1986).....................................6

*Bacon v. Phelps,* 961 F.3d 533 (2d Cir. 2020) ..........................................................5

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007)...........................................4, 5

*Carey Transp. v. Triborough Bridge & Tunnel Auth.,* 38 N.Y.2d 545 (1976)..........14

*Cavello Bay Reinsurance Ltd. v. Shubin Stein,* 986 F.3d 161 (2d Cir. 2021) ...........5

*Doe v. Sec'y of Transp.,* No. 17-CV-7868 (CS), 2018 WL 6411277
(S.D.N.Y. Dec. 4, 2018) .............................................................................................7

*F.C.C. v. Beach Communications, Inc.,* 508 U.S. 307 (1993)..................................12

*Janes v. Triborough Bridge and Tunnel Authority,* 977 F.Supp.2d 320
(S.D.N.Y. 2013)........................................................................................................11

*Matson v. Bd. of Educ.,* 631 F.3d 57 (2d Cir. 2011).....................................................5

*Northwest Airlines v. County of Kent*, 510 U.S. 355 (1994)..................5, 8, 9, 10, 11

*Pacheco v. Connecticut,* 471 F. Appx. 46 (2d Cir. 2012)..........................................4

*Romer v. Evans,* 517 U.S. 620 (1996)......................................................................12

*Sacerdote v. N.Y.U.,* 9 F.4th 95 (2d Cir. 2021) ..........................................................4

*Saenz v. Roe,* 526 U.S. 489 (1999)............................................................................5

*Selevan v. New York Thruway Auth.,* 711 F.3d 253 (2d Cir. 2013) ............. 5, 6, 8, 10

*Selevan v. New York Thruway Auth.,* 584 F.3d 82 (2d Cir. 2009) ..........................6, 9

*Spina v Department of Homeland Security,* 470 F. 3d. Supp. 116
(2d Cir. 2006) ........................................................................................13

*Town of Southold v. Town of E. Hampton,* 477 F.3d 38 (2d Cir. 2007) ....................7

*Walton v. New York State Dept. of Correctional Servs.,* 13 N.Y.3d 475 (2009) ......14

*Williams v. Town of Greenburgh,* 535 F.3d 71 (2d Cir. 2008) ...................................5

## **Statutes**

28 U.S.C. §1331, §1343(a)(3), §1367, §2201 and §2202 ..........................................2

N.Y. Const. art. I, §11 ..............................................................................................12

N.Y. Const. art. 16, §1 ..............................................................................................14

NY Veh & Traf L §1701 .......................................................................... 1, 3, 6, 13, 15

NY Veh & Traf L §1704 .............................................................................................3

NY Veh & Traf L §1704-a(1) .....................................................................................3

U.S. Const. amend. XIV, §1 .....................................................................................12

28 U.S.C. §1291 .......................................................................................................2

## **Rules**

Fed. R. Civ. P. 12(b)(6) .........................................................................................4, 5

## **INTRODUCTION**

Appellants Steven M. Neuhaus, Individually, and in his official capacity as County Executive and County of Orange respectfully appeal from the district court's order granting of the motion to dismiss of the defendants Triborough Bridge and Tunnel Authority ("TBTA") and Metropolitan Transit Authority ("MTA").

With respect to rail service Orange County is a transit desert because of its limited service to New York City. There is no one-set rail ride from Orange County into Manhattan. Orange County residents are served by only one sporadic train line that requires a transfer in either Secaucus or Hoboken in New Jersey. In light of this limited commuting option, Orange County residents must turn to traveling to Manhattan, for either work, healthcare or recreation, by car.

In 2019 the New York State Legislature enacted the Traffic Mobility Act which is set forth in New York State Vehicle and Traffic Law §1701 *et seq.,* which authorized the defendant TBTA pursuant to the central business district tolling program ("Program") to implement a toll for motorists entering the central business district ("CBD") in Manhattan. The revenue from the tolls is not earmarked for improvement of the streets of the CBD which motorists must pay to travel them but instead intended to provide funding for mass transit projects which Orange County residents receive no practical benefit from.

1

The Orange County complaint alleged violations of the right to travel and right to due process and equal protection and that the Program toll is an unauthorized tax. It is submitted that all three claims were plausibly pleaded and dismissal of them was incorrectly granted.

## STATEMENT OF JURISDICTION

On July 14, 2025, the district court entered an order disposing all of the plaintiffs' claims against the defendants. The plaintiffs filed a timely notice of appeal on August 12, 2025. The district court had subject matter jurisdiction over the underlying action pursuant to 28 U.S.C. §1331, §1343(a)(3), §1367, §2201 and §2202. The Second Circuit Court of Appeal has jurisdiction over the instant appeal pursuant to 28 U.S.C. §1291.

## STATEMENT OF ISSUES PRESENTED

1.     Whether the district court erred in dismissing the right to travel claim when its stated purpose is to deter travel and is not based on a fair amount of use and is excessive in relation to the benefit received.

2.     Whether the district court erred in dismissing the equal protection and due process violation claim as the Program toll lacks a rational basis given the continued inability of the MTA properly gather and manage its revenue and its lack of reform in those areas prior to seeking another source of revenue through the Program toll.

2

3.      Whether the district court erred in dismissing the unauthorized tax claim as the Program toll is more equivalent to a tax as its proceeds are directed to the benefit of the MTA mass transit system and not for the improvement of the streets within the CBD.

## STATEMENT OF THE CASE

In 2019, the New York State Legislature enacted New York State Vehicle and Traffic Law Article 44-C ("The Traffic Mobility Act"), which authorized the TBTA to impose tolls by establishing a central business district tolling program. The Traffic Mobility Act authorized the TBTA, pursuant to Vehicle and Traffic Law §1704-a(1), to establish and charge tolls for vehicles entering the CBD.  Vehicle and Traffic Law §1701 states the intent of the toll is to provide capital funding for mass transit, particularly the subways, to reduce vehicular congestion on roadways and to protect public health. (A-13)

Vehicle and Traffic Law §1704 defines the CBD as the "geographic area in the borough of Manhattan south of and inclusive of sixtieth street to the extent practicable but shall not include the FDR Drive, and New York State Route 9A otherwise known as the "West Side highway" including the Battery Park underpass and any surface roadway portion of the Hugh L. Carey Tunnel connecting to West St." (A-13,14) No part of the Program toll revenue is being designated for the maintenance or upkeep of the streets with the CBD (A-17)

3

The goals of the Program are to discourage vehicles from entering the CBD and to generate revenue for the repair of the New York City subway system. (A-14) The current peak-period cost of the Program toll for passenger vehicles is $9. (A-65)

The County of Orange as of the 2020 census has a population of over 400,000 residents. Even though the County of Orange is within the MTA region, it is a "transit desert". It has no one-seat train ride into Manhattan and is served by one sporadically run commuter train line which requires riders to transfer in either Secaucus or Hoboken, New Jersey to reach Manhattan. (A-14) In connection with the Program the MTA has not announced any substantial service upgrades to the commuter rail line servicing the County of Orange. (A-17)

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), the inquiry for motions to dismiss is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

In carrying out this review, a court must construe the complaint liberally, "accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor." *Sacerdote v. N.Y.U.,* 9 F.4th 95, 106-107 (2d Cir. 2021); *see Pacheco v. Connecticut,* 471 F. Appx. 46 (2d Cir. 2012). A complaint

4

need only plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp.* 550 U.S. at 570; *Bacon v. Phelps,* 961 F.3d 533, 540 (2d Cir. 2020) (quoting *Twombly,* 550 U.S. at 570). So long as plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the claim survives. *Matson v. Bd. of Educ.,* 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Iqbal,* 556 U.S. at 678); *Cavello Bay Reinsurance Ltd. V. Shubin Stein,* 986 F.3d 161, 165 (2d Cir. 2021) ( quoting *Iqbal,*556 U.S. at 678).

## ARGUMENT

## POINT I

## IT WAS AN ERROR TO DISMISS THE RIGHT TO TRAVEL CLAIM

It was an error to dismiss the right to travel claim as it was plausibly pled both under the strict scrutiny standard and the three-prong framework set forth in *Northwest Airlines v. County of Kent*, 510 U.S. 355 (1994).

### A. The Program is Subject to Strict Scrutiny

"Courts have long recognized that the Constitution protects a right to travel within the United States, including for purely intrastate travel." *Selevan v. New York Thruway Auth. ("Selevan II"),* 711 F.3d 253, 257 (2d Cir. 2013) (citing *Saenz v. Roe,* 526 U.S.489, 500; *Williams v. Town of Greenburgh,* 535 F.3d 71, 75 (2d Cir. 2008)).

"A state law implicates the right to travel when it actually deters such travel, when impeding travel is its primary objective, or when it uses any classification

which serves to penalize the exercise of that right." *Atty. Gen. of New York v. Soto-Lopez,* 476 U.S. 898, 903 (1986) (citations omitted). Although strict scrutiny will apply to denials of the fundamental right to travel, "minor restrictions on travel simply do not amount to the denial of a fundamental right." *Selevan v. New York Thruway Auth.* (*Selevan I*) 584 F.3d 82, 101 (2d Cir. 2009).

Furthermore, if a tolling policy involves "invidious distinctions" the strict scrutiny test would also apply. *Selevan II* 711 F.3d. at 258. Strict scrutiny should be applied here as the Orange County complaint plausibly pleads that the right to travel is violated as it sets forth facts that the Program deters travel, has as a primary objective the impeding of travel and uses a classification that penalizes the right to travel.

More specifically the Orange County complaint alleges that New York Vehicle and Traffic Law §1701 plainly states the intent of the Program is to reduce vehicular congestion of the roadways. (A-13 ¶ 17) Reducing "vehicular congestion" is done by deterring travel into the CBD by way of the Program toll. The Orange County complaint also pleaded the Program toll was an impediment to travel as its effect was to penalize drivers for entering the CBD. (A-17 ¶ 38)

Strict scrutiny should also be applied because the Program uses a classification that serves to penalize the exercise of the right to travel as drivers who enter the CBD are a class who are penalized by way of a toll for doing so.

6

In determining that the strict scrutiny test was inapplicable the district court was incorrect in its reliance on the holding of "burdens of a single mode of transportation do not implicate the right to interstate travel," in *Town of Southold v. Town of E. Hampton,* 477 F.3d 38, 54 (2d Cir. 2007). (A-72) This assumes that the motorist into the CBD has the choice of multiple modes of transportation into the CBD. That is not what was pleaded here. It was alleged in the Orange County complaint that although it is within MTA's jurisdiction, it is a "transit desert" because of the lack commuter rail service into Manhattan. Orange County residents are served by one sporadically run train line that does not even travel directly into Manhattan but rather requires a transfer in New Jersey in either Secaucus or Hoboken. (A-14 ¶ 21) So rather there being a choice of modes of travel, driving into the CBD is often the only viable mode, such as for workers with odd shifts who have no other viable commute.

For the same reason the district court was also incorrect in its reliance of the holding of "[t]here are any number of conditions that might make particular forms of travel more difficult for some people than for others … but avoiding the inconvenience associated with finding alternate ways to travel does not rise to the level of a fundamental constitutional right", in *Doe v. Sec'y of Transp.,* No. 17-CV-7868, 2018 WL 6411277, at *10 (S.D.N.Y. Dec. 4, 2018) (A72) Here, it is set forth

by Orange County that because it is a "transit desert" there are no such practical alternative ways to travel.

Based on the above the strict scrutiny standard should have been applied as deterring vehicular traffic into the CBD was a primary purpose of the Program and by charging vehicles to do so motorists are penalized for exercising their right to drive int the CBD. Furthermore, based on the allegation the Orange County is a transit desert, leaving commuters with no other option than to drive into the CBD, the Program toll constitutes more than a minor restriction on travel.

## B.  The Program Violates the Right to Travel Under *Northwest Airlines*

"Under *Northwest Airlines,* the constitutional permissibility of fees charged for the use of state facilities is evaluated under a three-part test, which asks whether the fee "(1) is based on some fair approximation of the use of the facilities, (2) is not excessive in relation to the benefits conferred, and (3) does not discriminate against interstate commerce.'" *Selevan v. New York Thruway Auth. ( Selevan II),* 711 F.3d 253, 259 (quoting *Northwest Airlines, Inc. v. County of Kent,* 510 U.S. 355, 369 (1994)).

Regarding the first requirement that the fee be based on some fair approximation of use of the facilities, while it does not require a "perfect fit", it does require "reasonableness". The fee imposed must supply "a benefit to users of a

facility that is at least roughly commensurate with the burden it imposes on them." *Selevan I,* 584 F.3d at 97.

In the Orange County complaint it is alleged that the Program toll is not reasonable because it provides no benefit to the class of people it is imposed against. (A-18 ¶ 44) It is alleged the Program toll is not reasonable the motor vehicle driver who pays the toll receives no benefit from it. No proceeds from the Program toll are earmarked for improvements of the streets within the CBD. There is also no specific designation of the funds for improvement of the one sporadic rail line that serves Orange County.

The district court found that the first requirement of *Northwest Airlines* was not met because it was "not alleged that toll revenue would be used to fund anything outside of New York City's integrated transportation system, they fail to show that the toll is not a fair approximation of use." (A-78) That however was not the requirement of the test under *Northwest Airlines.* It requires a reasonable connection between the fee and the use of the facility. Here there is no reasonable connection.

For the finding the first requirement was not met, the district court relied in part on *Angus Partners LLC v. Walder,* 52 F.Supp. 3d 546 (S.D.N.Y. 2014). *Angus Partners* concerned the diversion of approximately 60% of surplus TBTA funds to the MTA for projects unrelated to the TBTA. That was found to "not offend the notions of reasonableness or fairness." *Id.* at 568. That could be considered

9

reasonable because you have one large transportation authority transferring funds to another large transportation authority. This contrasts with the alleged unreasonableness of individual private citizen drivers who live in a transit desert, that is poorly served by the MTA with a single sporadic train line, paying a toll that does not even benefit the streets they are being charged for using. That those streets may be less congested because of the toll hardly makes it reasonable and there is probably no question the drivers would choose slightly more congestion rather than paying the toll.

Here the fee charged is not permissible, pursuant to the first prong, as it is not properly based on a fair use of the streets within the CBD.

The second prong of the *Northwest Airlines* test is that the fees cannot be excessive in relation to the benefits conferred. Under the excessiveness prong, the tolls collected "cannot be excessive in relation to the benefits conferred." This standard also requires "reasonableness". *Selevan II,* 711 F.3d at 260 (citations omitted)

Orange County pleaded in its complaint that even though it is within the MTA region, it is a "transit desert". There is no one-set train ride into Manhattan and Orange County residents are served by only one sporadic line which requires a transfer in New Jersey. (A-14 ¶ 21) Despite this lack of service there has been no specific plan announced, in connection with the Program toll revenue, to improve

10

the rail service available to Orange County residents. This, coupled with the fact that none of the revenue proceeds will be used to improve the streets within the CBD, establishes residents of Orange County will receive little benefit from Program toll thereby making it excessive.

Also relied on by the district court was *Janes v. Triborough Bridge and Tunnel Authority,* 977 F.Supp.2d 320 (S.D.N.Y. 2013). Rationale in that decision is actually supportive. One of the toll charges contested in that action was the Verrazano Bridge roundtrip toll of $10.66. With respect to that toll the court found "the Verrazano is the longest suspension bridge in the United States. A higher charge for use of such a facility, in one of the most expensive cities in the world, is not unreasonable. It does not shock the conscience." *Id.* at 334. In making that finding the court correlated the toll charge to the specific benefit the toll payor was getting for use of that bridge. With respect to this action the toll payers are alleging they are not getting such benefit from the payment of the Program toll as the revenue from it is not being allocated to improve the CBD streets they are being charged for using.

As the fee is excessive in relation to the benefits received from the drivers who pay it, the fee is also improper under the second prong *Northwest Airlines* analysis.

Regarding the third prong of the *Northwest Airlines* test it is conceded the Program does not discriminate against interstate commerce.

11

## POINT II

## IT WAS AN ERROR TO DISMISS THE DUE PROCESS/EQUAL PROTECTION CLAIM

The Fourteenth Amendment to the U.S. Constitution provide that no person shall be denied "the equal protection of the laws." U.S. Const. amend. XIV, §1; N.Y. Const. art. I, §11. "[I]f a law neither burdens a fundamental right nor targets a suspect class, [courts] will uphold the legislative classification so long as it bears a rational relation to some legitimate end." *Romer v. Evans,* 517 U.S. 620, 631 (1996). As part of the rational basis review there must be a "reasonably conceivable state of facts that could provide a rational basis for the classification." *F.C.C. v. Beach Communications, Inc.,* 508 U.S. 307, 313 (1993).

In its complaint Orange County alleges the Program draws an irrational distinction between motorists whose trips originate outside the CBD and are subject to the toll, and motorists whose trips originate within the CBD and pay no toll to drive in the CBD. (A-20 ¶ 66)

While not pled but addressed in the decision and order of the district court was the argument raised in opposition to the motion to dismiss that the notorious financial malfeasance of the MTA makes it irrational that it should adopt a revenue raising toll without first getting its financial house in order.

According to New York Vehicle and Traffic Law §1701 a purpose of the tolling program is to create "a long-term and sustainable solution … in order to ensure stable and reliable funding".

It is put forth that it is at least plausible that the Program toll has an invalid purpose because of the failure of the MTA to properly manage its revenue gathering and finances. Referred to in the submissions of Orange County in the motion practice below, as well as by the district court in its decision, was the *Blue-Ribbon Report on MTA Fare and Toll Invasion* which highlighted part of this mismanagement.

In its decision the district court set forth that "[I]t is not a function of the courts [under rational basis review] to speculate as to whether the statue is unwise or whether the evils sought to be remedied could have been better regulated in some other manner." *Spina v Department of Homeland Security,* 470 F. 3d. Supp. 116, 131 (2d Cir. 2006). Here, the continued inability of the MTA to properly gather and manage revenue is not based on speculation.

The reality of the financial malfeasance of the MTA is non-speculative and rather is, in fact, a matter of continued public record. A purported end and purpose of the Program is to fund mass transit projects. It is plausible here that equal protection/due process here is violated based on the lack of a rational basis for the MTA to seek increased revenue from the Program without first getting its own financial house in order.

13

## POINT III

## <u>IT WAS AN ERROR TO DISMISS THE UNAUTHORIZED TAX CLAIM</u>

"A tax is a charge that a government exacts from a citizen to defray the general costs of government unrelated to any particular benefit received by that citizen." *Matter of Walton v. New York State Dept. Of Correctional Servs.,* 13 N.Y.3d 475, 485 (2009). "Taxes are levied for support of the government, and their amount is regulated by its necessities. Tolls are compensation for the use of another's property, or of improvements made by him, and their amount is determined by the cost of the property, or of the improvements, and considerations of the return which such values or expenditures should yield." *Carey Transp. v. Triborough Bridge & Tunnel Auth.,* 38 N.Y.2d 545, 556 (1976) (Cooke, J., concurring).

Pursuant to Art. 16, §1 of the New York Constitution only the New York State Legislature may authorize a tax. It specifically sets forth the "power of taxation shall never be surrendered, suspended or contracted away" and "[a]ny laws which delegate the taxing power shall specify the type of tax that may be imposed thereunder and provide for their review."

In the third claim of the Orange County complaint it is alleged the charge for entering into the CBD is a tax rather than a toll because the revenue from it will not be used for the maintenance and repair of streets within the CBD. Rather, the proceeds will be used to fund mass transit projects not being used by the motorist

who is charged.  Since this constitutes a tax which the defendants do not have the authority to impose the toll charge is improper.

In rejecting this claim the district court found "the charge is not a tax because it plainly is not exacted on all citizens, but only as consideration for entering the CBD".  This finding is invalid because like many other taxes the Program toll is paid by the user.  Only the motorist entering the CBD pays that charge, just like sales taxes are paid only by the buyer of the product and mortgage taxes are only paid by the individual taking out the mortgage.  That a mortgage tax "is not exacted on all citizens" does not stop it from being a tax.

The district court also determined the Program toll was not a tax because "it does not support the general costs of government, but only mass transit."  While that may be partially true,  pursuant to the introductory statement of New York State Vehicle & Traffic Law §1701 the reason behind the Program was the "ongoing failures of the tracks, signals, switches, electrical power, and other transportation infrastructure throughout the subway system in the city of New York continue to have significant deleterious impact on the health, safety, and livelihood of commuters, tourists, resident New Yorkers, as well as business and commerce".  Thereby, just like a tax, the stated purpose of the program was for the benefit of the public and all citizens.  In contrast a toll is for improvements on what is being used

and not for the all-encompassing purpose of "the health safety, and livelihood of commuters, tourists, resident New Yorkers, as well as business and commerce".

As the Program toll revenue is not intended to be used for the maintenance of the CBD streets motorists are charged for using but rather for the "health, safety and livelihood of commuters, tourists, resident New Yorkers, as well as business and commerce" it is more akin to a tax for the benefit of the general public and not a toll and thereby improper.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should reverse the district's court order dismissing the plaintiffs' claims.

Dated: Goshen, New York
     October 3, 2025

                                    _/s/ William S. Badura_
                                    WILLIAM S. BADURA
                                    Senior Assistant County Attorney
                                    RICHARD B. GOLDEN
                                    County Attorney for Orange County
                                    _Attorneys for the Appellants_
                                    Orange County Government Center
                                    255-275 Main Street
                                    Goshen, New York 10924
                                    (845) 291-3150

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limit of Federal Rules of Appellate Procedure 27(d)(2)(A) because it contains 3,800 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word in Times New Roman 14-point font, a proportionally spaced typeface.

Dated:  Goshen, New York
       October 3, 2025

                                 */s/ William S. Badura*
                                 William S. Badura, Esq.